# CHARLESTON.

### JONES v. ISLAND CREEK COAL CO.

Submitted January 30, 1917.   Decided February 6, 1917.

1. EASEMENTS—*Grant*—*"Easement Appurtenant."*

     If an easement granted be in its nature an appropriate and use-.ful adjunct of the dominant estate conveyed, having in view the intention of the grantee as to the use of such estate, and there is nothing to show that the parties intended it as a mere personal right, it will be held to be an easement appurtenant to the dominant estate.   (p. 537).

2. MINES AND MINERALS—*Right of Way—Construction.*

     Where a deed conveys the minerals in a tract of land with the privilege of using the surface for rights of way for tramroads, or other means of transportation necessary for the removal of such minerals, and the minerals from any other lands, it will be held that the parties intended that the minerals so conveyed should be mined or produced in connection with the minerals from other lands to be acquired by the grantee, and the easement created by the grant of the rights of way will be held to be appurtenant to the grant of the minerals contained in the land, it being reasonably necessary that the said minerals should be mined in connection with the minerals from other lands.   The grant of such an easement will confer upon the grantee the right to construct a

79 W. Va.

tramroad across the surface of the land containing the minerals granted, for the purpose of hauling timber across the same to be manufactured into lumber, to be used for the purpose of mining the minerals granted, as well as the minerals being produced by the grantee from other lands in connection with the minerals so granted.  (p. 535).

3.  SAME—*Surface Rights—Timber.*

  The principal business of such grantor being the mining of coal, in case there is more timber upon the land being operated by him than is necessary for such coal mining purposes, such grantee will not be prohibited from hauling all of such timber across the land over which he has such easement upon such tramroads, and may sell the excess above that actually needed for mining purposes, this being merely incidental to the main business of producing the minerals from such lands.  (p. 540).

4.  CONTRACTS—*General Words—Construction.*

  Where general words are used in a contract after specific terms, the general words will be limited in their meaning or restricted to things of like kind and nature with those specified.  (p. 539).

Appeal from Circuit Court, Logan County.

Bill for injunction by Arthur S. Jones against the Island Creek Coal Company.  Decree for complainant, and defendant appeals.

  *Reversed.  Injunction dissolved.  Bill dismissed.*

*B. A. Devol* and *Auxier, Harman & Francis,* for appellant.

*Chafin & Bland,* for appellee.

RITZ, JUDGE:

On the 11th day of April, 1892, Ransom Curry being the owner of a tract of 70-1/4 acres of land situate in Logan County, West Virginia, conveyed the mineral under the same by deed of that date to U. B. Buskirk.  In addition to the conveyance of the mineral contained in the lease there are certain other stipulations granting, or purporting to grant, to the said Buskirk certain rights in connection with the said real estate.  Subsequently Curry conveyed seven acres of the surface of this 70-1/4 acre tract to another party, and the plaintiff Arthur S. Jones has become the owner of this seven acres of surface so conveyed out of the 70-1/4 acre tract by the said Curry.

The deed from Curry to Buskirk contains the following provision: "together with the full and complete rights and *privileges* of every kind for mining manufacturing and transporting such coal, gases, salt water, oil and minerals on through and over the said premises, and in particular the right of exploring for and extracting the said minerals, and also with full rights of way to, from and over said premises by the construction and use of roads, tramways, railroads or otherwise, for the purpose of exploring, extracting, storing, handling, manufacturing, refining, shipping or transporting all said materials, *whether contained on the said premises or elsewhere, and for any other purpose whatsoever,* and with the full right to take and use all water, stone and timber except walnut, poplar and oak over 12 inches in diameter found on said premises required for any purposes, provided, however, that the said parties of the first part shall have the right to take for themselves such coal as they may need for the domestic use of their own family so long as they shall remain on the said premises; or in case said coal cannot be taken without inconvenience to the mining operations of the party of the second part, then the same shall be delivered by and received from said party of the second part free of charge."

The Island Creek Coal Company is now the owner of the rights conveyed to Buskirk by the said deed of April 11, 1892. In addition to the minerals contained in this tract of 70-¼ acres of land, the defendant Island Creek Coal Company is the owner of the minerals underlying other lands adjacent to this 70-¼ acres, as well as the surface of some of such other lands, together with the timber thereon. It appears from the record that the defendant has erected a sawmill upon its lands situate on the creek below plaintiff's land and near thereto, and that in order to get its timber from its lands, lying above the land of the plaintiff, to its mill, it is necessary to cross over this land of plaintiff. For this purpose the defendant began construction of a tramroad across Jones' land, claiming that it had the right to so construct said tramroad and haul such timber over said land to its mill to be manufactured into lumber under and by virtue of the provisions of the deed from Curry to Buskirk above recited. The

plaintiff thereupon filed his bill praying that an injunction be awarded him enjoining and inhibiting the defendant from constructing the said tramroad over the said seven acres of land, and the circuit court granted said injunction and enjoined the defendant from constructing the tramroad over the said land for the purpose aforesaid, and from using the surface of the said land for any purpose other than for the purpose of removing the coal or other minerals from the 70-¼ acre tract. The defendant shows that the timber which it desires to cut and haul over this land is to be used by it for its mining operations, so far as the same is required therefor, and that the remainder will be sold in the open market; that it will require from one third to one half of all of said timber for the conduct of the mining operations.

The defendant contends that under the grant above recited in the deed from Curry to Buskirk it has the right to construct a tramroad, or tramroads, over this 70-¼ acres of land for any purpose whatsoever, and that the Circuit Court of Logan County therefore erred in enjoining it from constructing the tramroad then under process of construction. For a decision of this question it is necessary to construe the language contained in the deed from Curry to Buskirk recited above. It will be noted that the deed in express terms grants to Buskirk the right to have full rights of way to, from, and over said premises by the construction and use of roads, tramways, railroads or otherwise, for the purpose of exploring, extracting, handling, manufacturing, refining, shipping or transporting all said minerals, whether contained on the said premises or elsewhere, and for any other purpose whatsoever. The Circuit Court of Logan County construed this deed to be a grant to Buskirk of the minerals on the land, and the right to use the surface of the land in so far as it was necessary to remove the particular minerals underlying this land. We think this construction is too narrow. By the very language of the grant rights of way are given, not only for the removal of minerals upon this land, but such minerals whether contained on this particular tract of land, or elsewhere. When we take into consideration the fact that the

whole tract of land contains only 70-¼ acres it is quite clear that the intention of the parties was at the time this deed was made, to operate the same and produce the coal therefrom in connection with adjoining tracts of land. They knew that the coal could not be produced from a 70-¼ acre tract profitably, and for this reason the grant of the right to the use of the surface was made so that the party operating and producing the coal might use it as would become necessary in the production of the coal from such lands as he might acquire for the purpose of operation in connection with the tract of 70-¼ acres of land. To place the construction upon this deed that was placed upon it by the circuit court would give no meaning whatever to the language used therein, "whether contained on the said premises or elsewhere." We are not to assume that the parties did not intend these words to have some meaning, nor should we assume that they intend them to have any other meaning than that ordinarily given to such language; and giving these words their ordinary signification and meaning we come to the conclusion that Curry intended to grant to Buskirk not only the minerals in this tract of 70-¼ acres of land, together with the right to use the surface for extracting these minerals, but the further right to use the surface of this land in so far as it might be necessary in mining operations on other tracts of land mined and operated in connection with the 70-¼ acre tract.

In *Griffin* v. *Coal Co.*, 59 W. Va. 480, (53 S. E. 24) (2 L. R. A. N. S. 1115) this Court held: "Deeds conveying coal with rights of removal should be construed in the same way as other written instruments, and the intention of the parties as manifest by the language used in the deed itself should govern." This is such a familiar rule of construction that we need not cite authority to support it.

Of course, if the language used by the grantor in the deed purports to convey something in violation of some established legal rule, or that is not the subject of such a grant, then the grant would not be effective; and it is contended in this case that the grant cannot be effective as creating an easement appurtenant to any greater extent than it may be necessary to exercise it in the removal of the minerals from the 70¼ acre

tract; and that in so far as it granted any rights, or attempted to grant any rights, to Buskirk in excess of this that it was an easement in gross, and that such rights were not assignable by Buskirk, and could not be exercised by the defendant. These rights to construct tramroads or other means of transportation over the 70-1/4 acres of land cannot be construed to be in any sense an easement in gross. They are granted in connection with the granting of the minerals in the land, and they are appurtenant to the minerals granted. As has been before observed it was considered necessary by the parties, in order to the enjoyment by Buskirk of the minerals granted, to convey to him rights of way for tramroads or other means of transportation necessary in the removal of these minerals as well as any such minerals from any other lands. Unless the minerals in this land could be produced in connection with the minerals in adjoining tracts then the grant of the minerals in this land to Buskirk would be of little value, and unless Buskirk had the right to use the surface of this land in connection with the mining operations upon other lands which he might acquire to be operated in connection with this land, then he would be unable to carry on his mining operations in a practicable way. It is apparent from the situation presented here that the parties contemplated when they made this deed that the grant should be an easement appurtenant to the minerals granted in this land, to be used in the production of these minerals in conjunction with those from other lands, and this because the minerals in this land could only be profitably produced in connection with like minerals from other lands. Such was the holding of the District Court of the United States for the Northern District of Alabama, in the case of *In re Oak Leaf Coal Co.*, 225 Fed. 126.

In the case of *Smith v. Garbe*, 86 Neb. 91, (136 Am. St. Rep. 674) (124 N. W. 921) the court held: ''Whether an easement in a given case is appurtenant or in gross is to be determined mainly by the nature of the right and the intention of the parties creating it. If it be in its nature an appropriate and useful adjunct of the land conveyed, having in view the intention of the grantee as to its use, and there be-

ing nothing to show that the parties intended it to be a mere personal right, it will be held to be an easement appurtenant to the land, and not an easement in gross''. Applying this doctrine to the case at bar we find that if the use granted is in its nature an appropriate and useful adjunct of the estate conveyed, to-wit, the coal in the land, and there is nothing in the instrument showing that it was intended as a mere personal right, then it will be held as an easement appurtenant to the estate conveyed. As before noted, the right to use the surface of this land for the purpose of producing coal from other lands operated in connection with the coal on this 70-¼ acres, is a very useful and necessary adjunct. There is nothing in the deed to show that the parties intended that this right should be personal to Buskirk. This being true we must conclude that the right to construct tramroads, or other means of transportation across the surface of this land, for the purpose of mining and producing the minerals from other tracts of land, is an easement appurtenant to the minerals in the 70-¼ acre tract of land granted to Buskirk by Curry. In *Goodwillie Co.* v. *The Commonwealth,* 241 Ill. 42, the court said: '' Where the dominant and servient estates are clearly defined in an easement contract and the easement is beneficial to the dominant estate the easement is appurtenant and not in gross, and it is not necessary that the dominant and servient estates be contiguous or that the right of way granted shall terminate on the dominant estate.'' *Sanxay* v. *Hunger,* 42 Ind. 44; *White* v. *Railroad Co.,* 156 Mass. 181; *Winston* v. *Johnson,* 42 Minn. 398; *Lidgerding* v. *Zignego,* 77 Minn. 421 (77 Am. St. Rep. 677); *Reise* v. *Enos,* 8 L. R. A. 617; *Ballinger* v. *Kinney* (Neb.) 127 N. W. 239; *Russel* v. *Heublin,* 66 Conn. 486; *Stovall* v. *Granite Co.,* 116 Ga. 376. From these decisions it clearly appears that the grant of an easement will not be construed to be in gross if it can be fairly construed to be appurtenant to the estate of the grantee.

In 14 Cyc. p. 1201 it is stated: '' Easements by express grant or reservation must be limited to the matters contained in the deed. Nothing passes by implication as incident to the grant except what is reasonably necessary to its fair enjoy-

ment. The extent of the rights acquired must therefore depend upon the construction placed upon the terms of the grant, and in construing such instruments the court will look to the circumstances attending the transaction, the situation of the parties, and the state of the thing granted to ascertain the intention of the parties. In cases of doubt the grant must be taken most strongly against the grantor." It will be noted from this quotation that nothing passes by implication as incident to the grant except what is reasonably necessary to its fair enjoyment. In this case the situation of this land is such that it is reasonably necessary to the fair enjoyment of the grant of the minerals that the grantee of them shall have the right to remove minerals from other lands over the surface of this land, and if it can be said that such is the case then the grant of rights of way over the 70-1/4 acre tract of land for the purpose of removing coal from other tracts, as well as from this tract, will be held to be an easement appurtenant to the ownership of the minerals in this tract of land and to be enjoyed by the owner of these minerals.

The defendant contends that it is entitled to build a tramroad over the 70-1/4 acres of land for any purpose whatsoever. We cannot give assent to this contention. While it may be said that this is the language of the grant we conclude that the particular enumeration of the purposes for which rights of way were granted to Buskirk by Curry were not varied or enlarged by the subsequent general clause, "and for any other purpose whatever," but must be confined to such purposes as are reasonably necessary to the production of the coal from such lands as may be owned and intended to be operated by the defendant in conjunction with the tract of 70-1/4 acres. The rule of construction in cases like this is laid down in Elliott on Contracts, sec. 1532 to be: "The doctrine of *ejusdem generis* is applied in cases where there is a doubt as to the intention of the parties, and as a rule for the construction of contracts is stated to be that when general words are used in a contract after specific terms, the general words will be limited in their meaning or restricted to things of like kind and nature *(ejusdem generis)* with those specified." See also 13 Cyc. 631 where the rule is stated to be:

"And a particular description which is clear and explicit and is a complete identification of the property intended to be conveyed will not be varied or enlarged by a more general and less definite description, as in such a case the former will be considered as expressing the intent of the parties rather than the latter." See also *Darnell* v. *Wilmoth,* 69 W. Va. 704.

Applying these conclusions to the case in hand we find that the defendant has the right to construct such a tramroad over the land of the plaintiff as may be reasonably necessary for its use in procuring timber from other lands to be sawed into lumber for use in its mining operations upon the 70-¼ acre tract of land, or upon its other lands operated or intended to be operated in conjunction therewith.

It is shown, however, that the defendant does not contemplate using all of the lumber manufactured from the timber on its lands in its mining operations, but that its purpose is to sell so much thereof as remains after it has met the demand of such mining operations. It is clear from the record that the chief business and purpose of the defendant is to produce coal from its lands lying around this 70-¼ acre tract, and that it proposes to sell part of such lumber only because it does not need all of it in such mining operations. The sale of this surplus lumber in the market is simply an incident of the mining operations, and is done to prevent the waste of any part of the company's property. Would it be equitable to say that this defendant must lose part of the timber upon its lands because all of it cannot be used for mining purposes, or else that it must waive its right of way over this 70-¼ acre tract? We are of opinion that the sale of the surplus lumber is a mere incident to its operations as a mining concern, and the fact that all of the lumber which it is proposed to manufacture from timber, to be hauled over this tramroad, will not be used in actual mining operations, should not bar the defendant from building the tramroad and transporting thereover the timber owned by it.

It follows from what has been said that the decree of the Circuit Court of Logan County complained of will be reversed, the injunction dissolved, and plaintiff's bill dismissed.

*Reversed. Injunction dissolved. Bill dismissed.*