JOHN MAYS, *et al.*

*v.*

NORMA L. HOGUE, *et al.*

(No. 14161)

Decided November 20, 1979.

*Kennad L. Skeen* for appellants.

*Richard H. Brumbaugh* for appellees.

PER CURIAM:

The appellants in this proceeding, John Mays and Martha Mays, contend that the Circuit Court of Roane County erred in improperly construing a right of way agreement so as to subject their land to an easement appurtenant. They also contend that the circuit court erred in holding that the appellees, even though owners of the dominant estate and beneficiaries of the easement, had no duty to pay a proportionate share of the

cost of maintaining the roadway running over the right of way in question.

The issues presented in this case arise out of a certain "Right of Way Agreement" entered into between Clara McQuain, and her husband, and Franklin D. Ashley, and his wife, on May 11, 1973. That agreement provided in part:

> ". . . the parties of the first part [the McQuains] do GRANT and CONVEY, unto the parties of the second part [the Ashleys] a right-of-way over and across their tracts of land situate near the top of Amma Hill, Geary District, Roane County, West Virginia, and being the same property conveyed to first parties by George Ashley and others by deed dated March 9, 1965, and recorded in the Office of the Clerk of the County Court of Roane County, West Virginia, in Deed Book 212, at Page 564.

> "Said right-of-way to be bounded and described as follows:

> "Right-of-way shall commence on a newly constructed road to the Sloan Cemetery at the corner of Rosemary Ashley Martin and running over and across first parties' tracts of land to second parties' property, where it is now located, used and travelled, said right-of-way shall be twelve (12) feet in width and for all purposes and second parties shall maintain said road so as to do first parties no injury."

After the execution and recording of the "Right of Way Agreement," the McQuains conveyed their property to the appellants, John Mays and Martha Mays, and the Ashleys conveyed their property to the appellees, Norma L. Hogue and Robert Hogue.

The deed from the Ashleys to the Hogues provided:

> "The said Grantors do further grant to the said Grantee all their right, title and interest in and to a certain right of way for the use of the above described premises granted to the said Franklin

D. Ashley by Clara McQuain and her husband by a certain Agreement dated May 11, 1973, and recorded in said Clerk's Office in Deed Book 245 at Page 72."

On June 4, 1975, the appellants, the Mayses, filed the complaint instituting the action which is now before us. In that complaint they contended that the "Right of Way Agreement" entered into between the McQuains and the Ashleys created a personal privilege in the Ashleys which could not be transferred or assigned. They also contended that the privilege created was destroyed when the Ashleys attempted to transfer the privilege to the Hogues.

At the conclusion of their complaint the appellants prayed that the court declare that the appellees had no right of way over the appellants' property; that the appellees be enjoined from asserting any easement and trespassing on, over or across the appellants' land; that the appellants be awarded damages for trespasses already committed; and that, in the alternative, if the court should find that an easement did exist, then the appellees were responsible for maintaining the right of way, or were responsible for paying the appellants one-half of all reasonable costs expended in the past, for maintenance of said right of way.

The parties in this case, after filing various documents relating to the property in question, consented to submission of the issue of whether or not the "Right of Way Agreement" had created a mere personal privilege or a covenant which ran with the land to the court for its decision without a jury.

In an opinion dated November 16, 1976, the Judge of the Circuit Court of Roane County notified the parties that he had concluded that the "Right of Way Agreement" constituted a conveyance of an easement appurtenant to the lands of the McQuains and that it did not create a mere personal covenant. He held that the only assumption properly to be drawn from the failure of the McQuains to use language of limitation in the right of

way agreement was that no limitations on the use or alienation of the easement conveyed were intended. In an order entered on January 24, 1977, the judge official-ly ruled that the right of way agreement constituted a conveyance of an easement appurtenant to the lands of the grantees, Franklin D. Ashley and his wife, and that said instrument did not create a merely personal cove-nant. In a subsequent order entered on February 23, 1977, the judge ordered that the case be dismissed with prejudice.

At no point in its opinion or orders did the court refer to the appellants' prayer that the appellees be charged with a portion of all the costs of maintaining improve-ments located upon the right of way.

The appellants first assignment of error is that the trial court erred in ruling that the right of way agree-ment created an easement appurtenant to the appel-lants' estate instead of a purely personal covenant.

This Court in the case of *Jones v. Island Creek Coal Company*, 79 W. Va. 532, 91 S.E. 391 (1917) addressed the issue of what factors constitute the indicia of an intent to create an easement apurtenant. In the *Jones* case, we concluded that if an easement granted be in its nature an appropriate and useful adjunct of a dominant estate, having in view the intention of the grantee as to the use of such estate, in the absence of a showing that the parties intended it as a mere personal right, it will be held to be an easement apurtenant to the dominant estate.

In a later case, *Post v. Bailey*, 110 W. Va. 504, 159 S.E. 524 (1931), we stated that an easement will not be pre-sumed to be in gross when it can fairly be construed to be appurtenant.

The appellants in this appeal contend that the trial court erred in holding that the right created by the "Right of Way Agreement" was an easement appurte-nant instead of an easement in gross because the grant-ors in the "Right of Way Agreement" failed to use words

of limitation, that is, failed to use the words "their heirs and assigns" in the granting clause of the agreement.

It has been widely held that the omission of such words as "heirs and assigns" ordinarily does not tend to show that a grant is personal rather than appurtenant. *Teachout v. Capital Lodge of I.O.O.F.*, 128 Iowa 380, 104 N.W. 440 (1905); *United States Pipeline Co. v. Delaware, L. & W.R. Co.*, 62 N.J.L. 254, 41 Atl. 759 (1898); See also, *Cleveland, C., C. & St. L. Ry. Co. v. Griswold*, 51 Ind.App. 497, 97 N.E. 1030 (1912).

After examining the records in this case, we conclude that the easement granted in the "Right of Way Agreement" was clearly an appropriate and useful adjunct to the estate of the Ashleys. Under our ruling in *Jones, supra*, in the absence of a showing that the conveyance was a merely personal right, then the right created should be considered an easement appurtenant. There is in this case no showing that the parties intended that the right be a merely personal one. Such a conclusion under the authority cited is not jusitifed by the failure of the parties to use words of limitation. We, therefore, cannot conclude that the Circuit Court of Ronae County erred in ruling that the "Right of Way Agreement" created an easement appurtenant.

The appellants' second contention is that the trial court erred in ruling that the appellees did not owe them a duty to pay a proportionate share of the upkeep and maintenance of a road located upon the easement in question.

We note that the circuit court failed to rule in any manner whatsoever on the question of whether or not the appellees had a duty to pay for maintenance of improvements upon the easement. However, in examining the same record we do note that the right of way agreement provided ". . . second parties [predecessors in interest to the appelleees] shall maintain said road so as to do first parties no injury." Although we are not prepared to address the question of whether or not the

owner of a dominant estate has an obligation arising from law to maintain a road over an easement, we do conclude that the wording of the "Right of Way Agreement" involved in this case did impose upon the owners of the dominant estate some duty with regard to the easement granted under the agreement. The appellants are entitled to a construction of the language of that agreement relating to such obligation. We, therefore, conclude that the trial court erred in not construing the language and in not ruling upon the appellant's prayer regarding upkeep.

For the reasons stated above, that portion of the trial court's order holding that the "Right of Way Agreement" created an easement appurtenant is, affirmed; however, the case is reversed and remanded with directions that the circuit court construe the clause of the right of way agreement stating that the second parties shall maintain said road so as to do the first parties no injury.

*Affirmed in part;*
*reversed in part;*
*remanded with*
*directions.*